UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALBERT REMENTER, JR.,

    Plaintiff,

v.                                    CASE NO. 8:14-CV-642-T-17MAP

UNITED STATES OF AMERICA,

    Defendant.

_____/

ORDER

This cause is before the Court on:

Dkt. 21    Motion in Limine
Dkt. 24    Response

Defendant United States of America moves in limine to preclude the testimony of Plaintiff Rementer's treating medical witnesses regarding causation and future prognosis. Defendant United States of America seeks to preclude Plaintiff's treating physicians from offering expert opinion testimony on any issue that is outside the scope of their personal examination and treatment necessary for Plaintiff Albert Rementer.

Plaintiff Albert Rementer, Jr. opposes Defendant's Motion in Limine.

I. Background

In this case, Plaintiff Albert Rementer, Jr. seeks a judgment for damages against Defendant United States of America in the amount of $1,000,050.00, plus interest and costs. Plaintiff Rementer alleges that the United States Postal Service negligently

---


Case No. 8:14-CV-642-T-17MAP

operated or maintained a motor vehicle on January 29, 2013 which collided with Plaintiff's motor vehicle, causing a permanent bodily injury to Plaintiff, physical and mental pain and suffering, disability, mental anguish, inconvenience, loss of capacity for the enjoyment of life, aggravation of an existing condition, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and loss of ability to lead and enjoy a normal life.

After the subject accident, Plaintiff Rementer developed neck and upper back pain. (Dkt. 15, p. 2). Plaintiff Rementer claims permanent injuries caused by the subject accident, consisting of headaches, neck and back pain (herniated discs) and a torn rotator cuff in his left shoulder. (Dkt. 15, p. 4).

Defendant United States asserts that Plaintiff's negligence contributed to the cause of the accident, and that Plaintiff Rementer did not suffer any permanent injury as a result of the subject accident. Defendant United States of America contends that Plaintiff Rementer did not suffer any injuries from the subject accident as a result of negligence by the U.S.P.S. driver, and that the injuries that Plaintiff Rementer claims to have suffered could not have been sustained in this very low speed/impact accident (collision with rear bumper at 1 ½ mph) (Dkt. 15, p. 3). Plaintiff Rementer has a long history of multiple prior accidents which caused injuries to Plaintiff's shoulder, neck and back. Defendant United States contends that the injuries which Plaintiff Rementer claims now were preexisting and not the result of or aggravated by the subject accident. (Dkt. 15, p. 4).

This Court has jurisdiction pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671, et seq.

The substantive law of Florida determines the United States' liability under the Federal Tort Claims Act because the January 29, 2013 incident occurred in Orange

Case No. 8:14-CV-642-T-17MAP

County, Florida. McCorkle v. United States, 737 F.2d 957, 959 (11th Cir. 1984). Florida law requires a negligence plaintiff to prove "three elements: (1) a duty recognized by law requiring defendant to conform to a certain standard of conduct for the protection of others, including plaintiff; (2) defendant's failure to perform that duty; and (3) an injury or damage to plaintiff that was proximately caused by such failure." Worthington v. United States, 807 F.Supp. 1545, 1565 (S.D. Ga. 1992) (applying Florida law), rev'd on other grounds, 21 F.3d 399 (11th Cir. 1994).

A plaintiff must show by a preponderance of the evidence that a negligent act was a legal cause of damage. Abrisch v. United States, 359 F.Supp.2d 1214, 1229–30 (M.D. Fla. 2004) ("Negligence is a legal cause of damage if it directly and in natural and continuous sequence produces, or contributes substantially to producing such damage, so it can reasonably be said that, except for the negligence, the loss, injury or damage would not have occurred. Negligence may be a legal cause of damage even though it operates in combination with the act of another, some natural cause, or some other cause if such other cause occurs at the same time as the negligence and if the negligence contributes substantially to producing such damage." Id. (internal citations omitted).)

When a negligence claim is premised on aggravation of a pre-existing medical condition, damages are to be assessed against the negligent party for only that portion of the injury resulting from the aggravation of the pre-existing condition. Thomason v. Gordon, 782 So.2d 896, 899 (Fla. 5th DCA 2001).

Under Florida law, the Plaintiff in general bears the burden of proving causation. See e.g., Reaves v. Armstrong World Industries, Inc., 569 So.2d 1307, 1309 (4th DCA 1990). The Plaintiff "must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is

Case No. 8:14-CV-642-T-17MAP

not enough." Id, at 1309 (quoting Gooding v. University Hospital, 445 So.2d 1015 (Fla. 1984)). See also Hessen v. Jaguar Cars, Inc., 915 F.2d 641, 647 (11th Cir. 1990) ("Florida has adopted a preponderance standard for causation in both negligence and strict liability actions; a mere possibility of causation is not enough."). Plaintiff must come forward with admissible evidence on the issue of medical causation in order to demonstrate that there is a material issue of fact that should preclude summary judgment. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

In the negligence context under Florida law, "lay testimony is legally insufficient to support a finding of causation where the medical condition involved is not readily observable." Jones v. Royal Carribean Cruises, Ltd., 2013 WL 8695361, at *6 (S.D. Fla. Apr. 4, 2013) (quoting Crest Prods. v. Louise, 593 So.2d 1075, 1077 (Fla. 1st DCA 1992)). Florida courts have held that a plaintiff's back pain and other soft tissue injuries are not "readily observable" medical conditions. Louise, 593 So.2d at 1077; see also Vero Beach Care Center v. Ricks, 476 So.2d 262, 264 n. 1 (Fla. 1st DCA 1985) ("Soft-tissue injuries, such as lower back difficulties, are not readily observable, and hence are not susceptible to evaluation by lay persons."); Scott v. United States, 127 F.Supp. 422, 424 (N.D. Fla.1955) (stating that "it has been consistently held that whether there was a causal connection between an accident ... [and a sustained injury] ... is a question with respect to which only medical experts with training, skill, and experience could ... express an intelligent opinion").

II. Discussion

The initial scheduling order required Plaintiff to disclose expert testimony as required by Fed. R. Civ. P. 26(a)(2) on or before February 17, 2015. (Dkt. 11).

Plaintiff's disclosure (Dkt. 21-1) states that no expert witnesses have been

Case No. 8:14-CV-642-T-17MAP

retained or specially employed by Plaintiff to provide expert testimony. Plaintiff further states that the following are treating physicians and/or anticipated medical expert known to Plaintiff at that time (February 16, 2015):

| | |
|---|---|
| Robert Masson, M.D. ...... | DAMAGES (treating doctor) |

Dr. Masson will testify as to the findings of Plaintiff's neurological findings, injuries related to and caused by the subject accident, medical bills, future medical care and costs, and permanency.

| | |
|---|---|
| Robert C. Nucci, M.D. Dario Grisales, M.D. ...... | DAMAGES (treating doctor) |

Dr. Nucci and Dr. Grisales will testify as to the findings of Plaintiff's orthopedic findings, injuries related to and caused by the subject accident, medical bills, future medical care and costs, and permanency.

| | |
|---|---|
| Gary Gallo, M.D. ...... | DAMAGES (treating doctor) |

Dr. Gallo will testify as to the findings of Plaintiffs orthopedic findings, injuries related to and caused by the subject accident, medical bills, future medical care and costs, and permanency.

| | |
|---|---|
| Adrian M. Williams, D.C. ...... | DAMAGES (treating chiropractor) |

Dr. Williams will testify as to the findings of Plaintiff's chiropractic findings, injuries related to and caused by the subject accident, medical bills, future medical care and costs, and permanency.

| | |
|---|---|
| Douglas Price, D.C. ...... | DAMAGES (treating chiropractor) |

Dr. Price will testify as to the findings of Plaintiff's chiropractic findings, injuries related to and caused by the subject accident, medical bills, future

Case No. 8:14-CV-642-T-17MAP

medical care and costs, and permanency.

| | |
|---|---|
| H. Paul Hatten, Jr., M.D.<br>...... | DAMAGES<br>(diagnostic doctor) |

Dr. Hatten will testify as to the findings of Plaintiff's radiological/diagnostic studies, medical bills, causation.

| | |
|---|---|
| Sean M. Mahan, M.D.<br>...... | DAMAGES<br>(diagnostic doctor) |

In the Joint Pretrial Stipulation (Dkt. 15, pp. 10-11), Plaintiff Rementer lists the following expert witnesses:

"The following are treating physicians who may testify about Plaintiff's injuries, causation thereof, reasonableness, relatedness and necessity of treatment and cost of treatment:

1. Sean Mahan, M.D. [Injuries, MRIs, Plaintiff's pathology]...;
2. Gary A. Gallo, M.D. [Injuries, Plaintiff's orthopedic treatment and medical condition]...;
3. Norbert Ming, M.D.,...;
4. James Dolan, M.D.,...;
5. Robert Masson, M.D.,...;
6. Wayne Gardner, PA-C,...;
7. Robert C. Nucci, M.D.,...;
8. Dario Grisales, M.D. [Injuries, Plaintiff's injections and ablasions]...;
9. Denis M. Cavanaugh, M.D.
10. Douglas A. Price, M.D. [Injuries, Plaintiff's chiropractic treatment]...;

A. Expert testimony of Dr. Norbert Ming, Dr. James Dolan, Dr. Wayne Gardner, Dr. Denis Cavanaugh

Defendant United States moves to preclude Plaintiff Rementer from calling the above doctors as witnesses for expert testimony in any fashion because Plaintiff Rementer did not designate them as expert witnesses in his expert disclosure and therefore did not comply with Fed. R. Civ. P. 26(a)(2) and the Court's Case

Case No. 8:14-CV-642-T-17MAP

Management and Scheduling Order (Dkt. 11).

Plaintiff Rementer does not address the above request in Plaintiff's Response.

Fed. R. Civ. P. 37(c)(1) provides:

**(c)   Failure to Disclose, to Supplement an Earlier Response, or to Admit.**

**(1)   Failure to Disclose or Supplement.** If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial unless the failure was substantially justified or harmless.

Fed. R. Civ. P. 37(c) identifies a range of sanctions for failure to disclose. The burden is on the non-producing party to show that its actions were substantially justified or harmless. Hewitt v. Liberty Mutual Group, Inc., 268 F.R.D. 681 (M.D. Fla. May 27, 2010).

The parties were required to meet and confer as to the Joint Pretrial Stipulation fourteen days prior to the pretrial conference. See L. R. 3.06. The Pretrial Stipulation was filed on September 3, 2015. Discovery closed on April 3, 2015. The Court assumes that Defendant United States learned that Plaintiff Rementer designated the above witnesses as expert witnesses to be called at trial at some time between August 20, 2015 and September 3, 2015. At this point, the Court does not know the content of testimony that Plaintiff expects these witnesses would offer, and therefore it is difficult for the Court to assess the impact of the expected testimony on Plaintiff's case or on Defendant's ability to present its defenses. Based on the record, the Court concludes that Defendant does not know the substance of or basis for the expert opinions and will not have all the information necessary under Rule 26 or time to act on the information prior to trial. There is some degree of prejudice to Defendant United States because

Case No. 8:14-CV-642-T-17MAP

Defendant has no opportunity to depose these witnesses.

Plaintiff Rementer has not shown that Plaintiff's failure to disclose the above expert witnesses was substantially justified or harmless. The Court therefore **grants** the Motion in Limine in part as to the above witnesses (Drs. Ming, Dolan, Gardner, Cavanaugh).

B. Expert Testimony of Dr. Sean Mahan, Dr. Gary Gallo, Dr. Robert Masson, Dr. Robert Nucci, Dr. Dario Grisales, Dr. Douglas Price

1. Expert Testimony Beyond the Scope of Personal Examination and Necessity for Treatment

The above witnesses are physicians who treated Plaintiff Albert Rementer after the subject accident.

Defendant United States seeks to prevent Plaintiff's treating physicians from opining that Plaintiff's injuries are causally related to the subject motor vehicle accident of January 29, 2013. Defendant United States further seeks to exclude testimony based upon any information provided to Plaintiff's treating physicians in anticipation of litigation or trial with regard to future prognosis and/or costs.

Defendant relies on Williams v. Mast Biosurgery USA, Inc., 644 F.3d 1312 (11th Cir. 2011):

> The testimony of treating physicians presents special evidentiary problems that require great care and circumspection by the trial court. Much of the testimony proffered by treating physicians is an account of their experience in the course of providing care to their patients. Often, however, their proffered testimony can go beyond that sphere and purport to provide explanations of scientific and technical information not grounded in their own observations and technical experience. When such

Case No. 8:14-CV-642-T-17MAP

a situation presents itself, the trial court must determine whether testimony not grounded in the physician's own experience meets the standard for admission as expert testimony. As we pointed out in United States v. Henderson, 409 F.3d 1293 (11th Cir. 2005), distinguishing between lay FN2 and expert testimony is an important one; arriving at an appropriate conclusion requires that trial courts be vigilant in ensuring that the reliability requirements set forth in Rule 702 FN3 not " 'be evaded through the simple expedient of proffering an expert in lay witness clothing.' " Id. at 1300 (quoting Fed. R. Evid. 701 advisory committee's note to the 2000 amendment).

FN2. Under Federal Rule of Evidence 701, lay witnesses may offer opinions which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FN3. Federal Rule of Evidence 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In Henderson, we did not apply the governing principles in this area but instead relied upon a harmless error analysis. Nevertheless, our discussion in the course of that decision sheds substantial light on the distinction between lay and expert testimony in the context of physician testimony. FN4  We cited with approval the decision of our colleagues in the Tenth Circuit in Davoll v. Webb, 194 F.3d 1116 (10th Cir. 1999). In Davoll, the Tenth Circuit wrote that "[a] treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party." Id. at 1138; see also Henderson, 409 F.3d at 1300 (citing Davoll). We also noted with approval the Tenth Circuit's decision in Weese v. Schukman, 98 F.3d 542 (10th Cir.1996), that a physician may offer lay opinion testimony, consistent with Rule 701, when the opinion is "based on his experience as a physician and [is] clearly helpful to an understanding of his decision making process in the situation." Id. at 550; see also Henderson, 409 F.3d at 1300 (citing Weese with approval). These cases make clear that, when a treating physician's testimony is based on a

9

Case No. 8:14-CV-642-T-17MAP

> hypothesis, not the experience of treating the patient, it crosses the line from lay to expert testimony, and it must comply with the requirements of Rule 702 and the strictures of Daubert.

Defendant United States argues that, unless the causation opinion of each treating physician was made at the time of treatment, and was a necessary part of that treatment, i.e. not done in anticipation of litigation, each treating physician should be deemed one retained to provide expert testimony in this case, and required to submit an expert report in accordance with Fed. R. Civ p. 26(a)(2). See Donaldson v. United States, 2011 WL 1806990 (M.D. Fla. May 11, 2011)(treating physician permitted to testify with regard to causation so long as opinion was formed during the course of treatment rather than as part of litigation preparation.)

Defendant United States argues that Plaintiff cannot demonstrate that his treating physicians should be permitted to testify as to causation, and the treatment Plaintiff received did not require the providers to reach opinions as to causation. Defendant United States further argues that the treating physicians could have been designated expert witnesses pursuant to Fed. R. Civ. P. 26(a)(2)(B) and prepared reports, but the treating physicians cannot now be provided additional information about the alleged motor vehicle accident (via deposition testimony, expert reports, subpoenaed medical records or discussions with counsel) and then come to trial to opine that Plaintiff was injured in the subject accident, and their treatment was causally related to the accident.

Defendant United States recognizes that each treating physician may provide testimony regarding their treatment of Plaintiff, but each treating physician may not testify as to causation or other matters outside the scope of their personal examination which was necessary to that treatment.

Case No. 8:14-CV-642-T-17MAP

Plaintiff Rementer responds that all of the expert witnesses disclosed by Plaintiff on February 16, 2015 were physicians who treated Plaintiff, and none of their testimony was "acquired in preparation for trial." Plaintiff Rementer argues that written reports were not required pursuant to Fed. R. Civ. P. 26(a)(2)(B). Singletary v. Stops, Inc., 2010 WL 3517039 (M.D. Fla. Sept. 7, 2010).

Plaintiff Rementer further argues that each treating physician was required to determine causation as a part of treatment under Florida law, for the purpose of billing Plaintiff Rementer's Personal Injury Protection benefits. Plaintiff Rementer argues that some of the medical treatment that Plaintiff received was paid by PIP benefits. Plaintiff further argues that the causation opinions were "made at the time of treatment," and as "a necessary part of that treatment," by Drs. Nucci, Grisales, Williams and Masson because the opinions are contained in their written treatment reports and formed at the time of treatment.

The Court notes that, if a treating physician acquired the opinions that are the subject of the testimony directly through treatment of the plaintiff, the treating physician "cannot be forced to file a written report required by Rule 26(a)(2)(B)." Salas v. United States, 165 F.R.D. 31, 33 (W.D.N.Y. 1995). Because a treating physician considers not only the plaintiff's diagnosis and prognosis, opinions as to the cause of injuries do not require a written report if based on the examination and treatment of the patient. Baratta v. City of Largo, 2003 WL 2568643 at *2 (M.D. Fla. Mar. 18, 2003). Treating physicians commonly consider the cause of any medical condition presented in a patent, the diagnosis, the prognosis, and the extent of disability, if any, caused by the condition or injury. Shapardon v. West Beach Estates, 172 F.R.D. 415, 416-17 (D. Haw. 1997).

At this point the Court does not know the content of medical records of each treating physician, and the Court does not have the deposition of each treating

Case No. 8:14-CV-642-T-17MAP

physician. At trial, if the testimony of each treating physician as to causation is not shown to be sufficiently related to the information disclosed during the course of Plaintiff's treatment, appropriate objections and motions can be made. The Court therefore denies Defendant's Motion in Limine as to this issue without prejudice.

2. Exclusion for Failure to Provide Appropriate Summary of Facts and Opinions of Witnesses' Expected Testimony

Defendant United States asserts that Plaintiff Rementer did not include an appropriate summary of the facts and opinions to be offered at trial, and Defendant has been prejudiced by the inadequate disclosure, as to Defendant's ability to rebut the treating doctors' causation opinions at trial. Defendant presumes that Plaintiff is relying on the treating physicians' medical records, but argues that, where no specific portions of the medical records were noted, Plaintiff has not complied with Rule 26(a)(2)(C)(ii). See Cruz v. United States, 2013 WL 246763, *5 (S.D. Fla. Jan. 22, 2013).

Plaintiff Rementer responds that Plaintiff believes that Plaintiff made proper disclosure, but, even if Plaintiff's disclosures were inadequate, Defendant has suffered no harm or prejudice, and took no action to timely cure the deficiency. Plaintiff Rementer argues that Defendant made no complaint about the sufficiency of Plaintiff's disclosures between February 16, 2015 until August 31, 2015.

The Court notes that the Court has broad discretion in deciding whether a failure to disclose evidence is substantially justified or harmless under Rule 37(c)(1), and the following factors should be considered: 1) surprise to the party against whom the evidence would be offered; 2) ability of that party to cure the surprise; 3) the extent to which allowing the evidence would disrupt the trial; 4) the importance of the evidence, and 5) the nondisclosing party's explanation for its failure to disclose the evidence.

Case No. 8:14-CV-642-T-17MAP

Plaintiff argues that there is no surprise, as the treating physician's records provided a summary of the facts and opinions to which the physician is expected to testify. Plaintiff further argues that Defendant had the ability to complain and cure the surprise, that allowing the evidence will not disrupt the trial, that the evidence is important to establish causation, and Plaintiff believes the disclosures were sufficient.

The Court is troubled that Plaintiff believes that Plaintiff's disclosures are sufficient, merely because the medical records of each treating physician contain the information somewhere.   In this case, due to the alleged prior injuries and history of multiple accidents, evidence sufficient to establish causation is critical.  However, Defendant did not seek an order compelling Plaintiff to cure the alleged inadequate disclosures, and to reopen discovery at this point would require the Court to reschedule the trial. The Court therefore denies the Motion in Limine as to this issue. Accordingly, it is

**ORDERED** that Defendant's Motion in Limine (Dkt. 21) is **granted** in part and **denied** in part. The Motion in Limine is **granted** as to Drs. Ming, Dolan, Gardner and Cavanaugh, and otherwise **denied without prejudice**.

**DONE and ORDERED** in Chambers in Tampa, Florida on this 9th day of October, 2015.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record

Case No. 8:14-CV-642-T-17MAP

Case No. 8:14-CV-642-T-17MAP